## UNITED STATES v. VATUNE.

(District Court, N. D. California, S. D.    August 31, 1923.)

No. 12513.

1. Searches and seizures ⬤➔7—Whether search and seizure are unreasonable is a judicial question.

Whether a search and seizure are unreasonable is always a judicial question, determinable from a consideration of the circumstances involved.

2. Searches and seizures ⬤➔7—Search by government agent presumed reasonable.

Officers and agents of the United States are presumed to act under legal authority, and the burden of proof rests on one alleging that a search and seizure by such officer or agent was unreasonable and in violation of law.

3. Arrest ⬤➔71—Searches and seizures ⬤➔3—Officer must have reasonable ground of belief or supicion that the law is being violated.

To justify a government agent in making an arrest or search and seizure without a warrant, he must have such knowledge, from employment of his own senses, or from information actually imparted to him by another, as to cause him, honestly and in good faith, acting with reasonable discretion, to entertain the belief or suspicion that the law is being violated.

4. Searches and seizures ⬤➔3—Claim of good faith by officer supported by evidence of criminality discovered through search.

The claim of good faith of an officer or agent in making a search and seizure is materially supported by the subsequent discovery of evidence tending to support the charge that the law was then and there being violated.

5. Arrest ⬤➔71—On justified arrest, officer may search for evidence of crime.

Having probable cause to make an immediate arrest it is the duty of the officer to take into custody the instruments of the crime and such other articles as may reasonably be of use as evidence, and to that end he may search the person of the accused and all articles or instrumentalities in his immediate possession.

6. Arrest ⬤➔71—Property found in lawful search after arrest, and held as evidence, may not be returned before trial.

Pending trial of a person lawfully arrested, there can be no return of property or instruments taken from his immediate possession on his arrest, and held as evidence, and, if they were held or used by him in violation of law, there can be no return.

7. Intoxicating liquor ⬤➔251—Owner of liquor seized while being transported in violation of law not entitled to its return.

Under Prohibition Act, tit. 2, §§ 25, 26, 33, no property rights exist in liquor being transported in violation of law, and the owner of liquor seized while being so transported is not entitled to its return, and he has the burden of proving that his possession was lawful.

8. Indictment and information ⬤➔137(4)—That an information is based on evidence unlawfully obtained is not ground for motion to quash.

That the evidence on which it is based was unlawfully obtained is not ground for quashing an information.

Criminal prosecution by the United States against Paul Vatune. On motions by defendant for return of property seized 'and to quash information. Both motions denied.

John T. Williams, U. S. Atty., and Kenneth M. Green, Asst. U. S. Atty., both of San Francisco, Cal.

Edward A. O'Brien, of San Francisco, Cal., for defendant.

⬤➔For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

BLEDSOE, District Judge. This is a motion for the return of 402 bottles of wine, the return of the seized automobile, and the quashing of an information, regularly pending, charging the possession and transportation of the said 402 bottles of wine. Defendant's motion is based upon his affidavit, which is childlike and bland in its simplicity: In his truck he was carefully driving along the right-hand side of Van Ness avenue in San Francisco, minding his own business, and conducting himself with apparent perfect propriety. In the truck, "carefully concealed from the public view by the fact that it was in a crate, and by the further fact that it was carried under the cover of said truck," reposed the 402 bottles of wine hereinabove referred to. Defendant then avers that he was passed by certain agents of the national prohibition force, traveling along the other side of the street, who, observing him and his truck, ordered him to drive to the edge of the sidewalk, and then, searching his truck, discovered his wine, so carefully concealed, and, placing him under arrest, seized the wine and truck.

In substance, his contention is that, proceeding along the street with his concealed cargo of contraband, he was enjoying the protection of the Fourth and Fifth Amendments to the federal Constitution; that, in consequence, the search and seizure of his truck and wine, and his own arrest, without process of any kind, justify all the relief asked for herein. In this behalf he cites United States v. Rembert (D. C.) 284 Fed. 996, and United States v. Myers (D. C.) 287 Fed. 260. The motion was submitted by the government without argument.

An affidavit of a prohibition agent in the record is to the effect that he was informed by an apparently credible person—an "employee of the federal Prohibition Director"—that a certain designated truck carried intoxicating liquor unlawfully; that, going to the place indicated, he saw defendant's truck; that, looking through the slats of the crates on the truck, he saw some bottles of wine; that he "also saw in the front seat on the truck several lug boxes, containing bottles, and that said boxes were not covered or hidden from view, but, on the contrary, were in plain sight"; that he thereupon inquired of defendant what he had in the truck, and defendant answered that he had claret wine, and also said that he was transporting it pursuant to a permit, "and that the same was at the custom house." The agent thereupon investigated (probably by telephone), and, finding that no such permit had been issued, or even applied for, forthwith placed the defendant under arrest and seized the wine and truck.

Though not stated in so many words, the real contention of defendant is that, because of his precautionary efforts toward effective concealment of his unlawful burden, the terms of the Fourth and Fifth Amendments actually protected him in the positive and flagrant violation of the Eighteenth Amendment. The quality of citizenship that would lend itself with complacency to such a contention is not such as to win from this court any pronounced degree of sympathetic consideration.

[1, 2] The Fourth Amendment affords inviolable protection to the people with respect to "their persons, houses, papers, and effects, against unreasonable searches and seizures." What is an "unreasonable" search or seizure is always a judicial question (United States v.

Bateman [D. C.] 278 Fed. 231, 232), and is determinable from a consideration of the circumstances involved. Officers of the government act under legal authority, in pursuance of oath and official station, and it will be presumed, in the absence of countervailing proof, that they have performed their duty—that is, that they have not been guilty, in a given instance, of making an unreasonable search or effecting an unreasonable seizure. The burden of showing the contrary, then, is upon him who contends to the contrary.

[3] It will be conceded, of course, that an officer has no right to assume that an apparently innocent and unoffending person is actually engaged in a violation of the law. Therefore such officer would not be acting reasonably—would be acting "unreasonably"—were he to subject apparently innocent and unoffending persons to search or their effects to seizure. Having no reason to believe in their guilt, it would be unreasonable to act as if they were in fact guilty. Therefore, to justify an arrest—an invasion of the rights of the person, or a search or seizure; an invasion of the rights of the property—of an individual, sufficient to avoid the protective provisions of the Fourth Amendment, the officer must be in possession of such knowledge, from the employment of his own senses, or from information actually imparted to him by another, as to cause him honestly and in good faith, acting with reasonable discretion, to entertain the belief or suspicion that the law is being violated. Ballard v. State, 43 Ohio St. 16, 1 N. E. 76, 79; Ex parte Morrill (C. C.) 35 Fed. 261, 267; United States v. Snyder (D. C.) 278 Fed. 650; Wharton's Crim. Proc. (10th Ed.) § 34. And if the suspect be committing a concealed crime, one not open to view, the greater the obvious necessity, of course, of relying upon information. Ballard v. State, supra.

[4] In these days of widespread violation of the law, due to large temptation, big profits, and unrestrained appetites, together with the facile employment of the automobile in aid of successful 'consummation thereof, an officer ought not to be censured nor society penalized by a meticulous refusal to support a prosecution, if the officer, even in the absence of a warrant, and even with respect to a mere misdemeanor, acting upon the appearances, determines that the law may be maintained only by the "immediate apprehension" (Wharton's Crim. Proc. [10th Ed.] § 35) of the offender, providing, always, of course, that the officer acts in good faith and upon reasonable grounds of suspicion (Houck v. State, 106 Ohio St. 195, 140 N. E. 112). And it ought to be obvious that the claim of good faith of the officer will always be materially supported, though of course it could not be created, by the subsequent discovery of evidence tending to support the charge that the law was then and there being violated. The event contributes justification for the act. In this behalf the facts and conclusions in Ballard v. State, supra, are peculiarly apposite herein. There the officer, acting upon information coming from a reliable source, sought to arrest a person as for the unlawful carrying of a completely "concealed" weapon. Resisting arrest, the offender shot the officer with the weapon which he had been concealing. On trial he claimed the right so to do, because the officer did not have absolute knowledge that he was then violating the law. This claim was denied, and justification for the at-

tempted arrest was accorded to the officer, because of the information imparted to him, his reliance thereon, and the fact, subsequently discovered, that the person sought to be apprehended was in truth then and there violating the law. The good faith of the officer, reasonably arrived at, was the controlling factor.

In considering the question of such good faith, it ought also to be specially kept in mind that all officers are presumed to be engaged only in the proper performance of their duty, and that the exception to the rule, so to speak, should be specially pointed out. All reasonable intendments should be indulged in, in support of the propriety of official action, and all proper encouragement given to those actually engaged, not infrequently at the peril of their lives, in the attempted protection of society from those who would despoil or destroy it.

In other words, in the practical and intelligent effort to enforce the law in the face of the violations thereof, made possible by modern conditions, modern instrumentalities, and modern devices, we will dismally fail in our duty to protect society, if we fail to make adequate and effective use of all the machinery available under the law. This does not mean that individual rights, guaranteed under the Constitution or otherwise, are to be disregarded; but it does mean, to me, at least, that positive encouragement, arising out of a lax regard for the rights of organized society, is not to be accorded to those who would subvert the law and ultimately effect the destruction of government.

[5] Having probable cause to subject the person to immediate apprehension and detention, the officer possesses ample authority—in fact, it is his duty—to take into custodia legis the instruments of the crime and such other articles as may reasonably be of use as evidence upon the trial. Thatcher v. Weeks, 79 Me. 547, 11 Atl. 599; Spalding v. Preston, 21 Vt. 9, 50 Am. Dec. 68; Getchell v. Page, 103 Me. 387, 69 Atl. 624, 18 L. R. A. (N. S.) 253, 125 Am. St. Rep. 30. To make effective the performance of this duty, it is, of course, necessary and permissible that the officer search the person of the accused and all articles or instrumentalities in his immediate possession.

[6] Pending a determination of the truth of the charge, by trial according to law, there can be no return of the property or instruments so taken; and if it be determined that the property was being held or used by the claimant thereof in violation of law (as is obviously admitted in so far as this particular proceeding is concerned), then there can be no return of the property at all. It is then outlawed, and despite an application for its return by the actual owner, the law will not "lend its aid to the destruction of its own authority and to the disobedience of its own commands." Lord v. Chadbourne, 42 Me. 429, 440 (66 Am. Dec. 290); Spalding v. Preston, supra. A suspect being arrested for counterfeiting, and many splendidly contrived counterfeit coins being found upon or about his person, what court would be disposed to order their return to him, even though, for one reason or another, he should actually fail of conviction? The same outlawry exists in regard to contraband liquors, and the same reasoning is equally applicable. The vigorous language employed by Judge Redfield in Spalding v. Preston, supra, is worthy of the careful consideration of

those seemingly disposed to regard the careful and efficient "bootlegger" as the only one in our midst possessing any substantial rights nowadays.

[7] The conclusions announced herein are fortified by express congressional enactment. In section 26 of the National Prohibition Act (41 Stat. 305) it is made the duty of any officer of the law, including any agent of the Commissioner of Internal Revenue (section 1, National Prohibition Act), to seize any and all intoxicating liquors being transported in any craft or vehicle, and to arrest the person in charge thereof, whenever such officer "shall discover any person in the act of transporting in violation of the law" any such liquors. Upon the conviction, of the person accused, such liquor so seized is to be destroyed. It is also provided in section 25 that:

"It shall be unlawful to have or possess any liquor, * * * intended for use in violating this title or which has been so used, and no property rights shall exist in any such liquor."

If the liquor be seized from an unlawful possession, then there exists no property right in it on the part of its possessor, and in consequence no right to ask for its surrender or return, and in this behalf it should also be noticed that by the provisions of section 33 of the National Prohibition Act:

"The burden of proof shall be upon the possessor in any action concerning the same to prove that such liquor was lawfully acquired, possessed, and used."

If, therefore, in any proceeding, or pursuant to any form of legal redress, the claimant of liquor can successfully meet this burden of proof, and show by a preponderance of the evidence that it was in his lawful ownership, custody, or possession, then he may effect its return; otherwise, being outlawed by the law of the land, it will be destroyed, or subjected to such other disposition as the court, pursuant to the provisions of section 25 of the National Prohibition Act, shall prescribe.

[8] I know of no direction, authority, or precedent, and none has been called to my attention, justifying the quashing of an information upon any of the grounds asserted herein. To quash an information regularly pending upon the asserted securing of evidence in violation of the constitutional right of the defendant would open the door to a quashing of an information upon the asseveration of the defendant, backed by his affidavit, perhaps, that he was innocent of the charge preferred. This would initiate a new method of defense in criminal cases, and is, I am constrained to hold, without foundation in reason, precedent, or authority. If it should appear in any case that evidence possessed by the government had been secured unlawfully and in violation of defendant's constitutional rights, the court, upon seasonable application, would, of course, by proper order, forbid the use of such evidence; upon such a happening, such being the only persuasive evidence possessed, it might be that a dismissal of the information could, with propriety, be suggested and had. There is neither occasion nor propriety, however, in my judgment, in the quashing of an information based upon such a ground.

I am not unmindful of the fact that the information imparted to the officer making the arrest herein came from "an employee of the federal Prohibition Director," and therefore, presumably, from one acting for and in behalf of the government, whose unreasonable search could not be made available for the evidentiary purposes of the government. Weeks v. United States, 232 U. S. 383, 398, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177. And, of course, evidence invalid, because unconstitutionally obtained by a government agent, could not be transmuted into valid and legal evidence by the simple device of imparting it, or knowledge of it, to another government agent. The vice attendant upon its original exaction would still inhere. However, in support of the regularity of conduct of the original discoverer of the existing situation, it is susceptible of reasonable inference, from the facts adduced, that no "unreasonable search" was indulged in by such original discoverer. At least, there is nothing to the contrary sufficient to overcome the burden of proof resting upon the claimant.

The motion of the defendant, in each of its several aspects, is denied.