# OPINION BY EDWARD T. BISHOP, COUNTY COUNSEL, BY J. A. TUCKER, DEPUTY COUNTY COUNSEL RENDERED AT REQUEST OF WM. I. TRAEGER, SHERIFF OF LOS ANGELES COUNTY, CALIFORNIA.

## SEARCHES AND SEIZURES UNDER CONSTITUTION WRIGHT ACT AND UNDER VOLSTEAD ACT.

### June 10th, 1924.

1. INTOXICATING LIQUORS — SEARCH WARRANT; MUST DESCRIBE AUTOMOBILE.

To authorize a deputy sheriff to stop and search an automobile in the enforcement of the Wright Act, the search warrant must particularly describe the automobile to be searched and the property sought in view of Const. Art. I Sec. 19 and Pen. Code. 1525.

2. SEARCHES AND SEIZURES—NO GENERAL RIGHT TO SEARCH AUTOMOBILES.

No general right exists to stop automobiles and search them without a warrant.

3. INTOXICATING LIQUORS — SEARCHES WITHOUT WARRANT—KNOWLEDGE OR INFORMATION—REASONABLENESS.

To authorize an officer to search an automobile without a warrant, in the enforcement of the Wright Act, he must be in possession of such knowledge from the employment of his own senses or from information actually imparted to him by another as to cause him, honestly and in good faith, acting with reasonable discretion, to entertain the belief that intoxicating liquors are being transported therein in violation of law.

4. INTOXICATING LIQUORS — SUBJECT OF REASONABLE SEARCHES AND SEIZURES.

Intoxicating liquor is a proper subject of search and seizure, but Const. Art. I Sec. 19 and Pen Code Sec. 1525 prohibits unreasonable searches and seizures.

5. SEARCHES AND SEIZURES — WARRANT MUST CONFORM TO CONST. AND STATUTE.

A search warrant must conform strictly to the constitutional and statutory provisions for its issuance.

**6.   SEARCHES AND SEIZURES — WARRANT TO SEARCH ALL PASSING CARS NO PROTECTION TO OFFICER.**

A warrant which attempts to authorize the search of any or all automobiles passing over a certain street or road would be without force and effect and of no protection what-so-ever to the officer in view of Const. Art. I Sec. 19 and Pen. Code Sec. 1525.

**7.   CONST. LAW.   SEARCHES AND SEIZURES ON STATE HIGHWAYS — RESTRICTION ONLY BY STATE CONST.**

The only restriction upon searches and seizures of automobiles by state officers upon state highways is in Const. Art. I. Sec. 19, prohibiting unreasonable searches and seizures and what constitutes and an unreasonable search and seizure is always a judicial question, determinable from the circumstances.

**8.   CONST. LAW — LEGISLATURE — REASONABLE SEARCH — JUDICIAL QUESTION.**

The legislative body is without authority to determine what is a reasonable search and each case must stand upon its own facts.

**9.   SEARCHES AND SEIZURES — REASONABLE — OFFICER MUST DETERMINE AT HIS PERIL.**

The officer making the search without a warrant must in each instance determine at his peril whether the search is a reasonable one.

**10.   INTOXICATING LIQUORS — RIGHT OF SEARCH INCIDENT TO ARREST — PRUDENCE.**

The rule permitting an officer to search a motor vehicle whenever he, either from circumstances or from information on which a reasonable prudent man would act, has probable and reasonable grounds to believe that liquor is being transported therein seems evolved from the rule that the right of search is an incident to a lawful arrest, plus the courts' recognition of the fact that unless officers have such right the law will be made nugatory.

---

**Edward T. Bishop, County Counsel.**

---

Wm.I. Traeger, Sheriff.   County of Los Angeles.

Dear Sir:   We are in receipt of your request of May 26 for an opinion as to the right of your deputies

to stop and search automobiles in the enforcement of the Wright Act.    In response thereto we submit the following conclusions.

1.    That if the deputy is acting under authority of a search warrant, it must particularly describe the automobile to be searched and the property sought or it is no protection to him.

2.    That no general right exists to stop automobiles and search them without a warrant.

3.    That to authorize the officer to make a search of an automobile without a warrant he must be in possession of such knowledge from the employment of his own senses or from information actually imparted to him by another as to cause him, honestly and in good faith, acting with reasonable discretion, to entertain the belief that intoxicating liquor   is being transported therein in violation of law.

The reasons for our conclusions are hereinafter set forth.

It is now well established in our law that intoxicating liquor is a proper subject of search and seizure. 3 A. L. R. 1515; 13 A. L. R. 1316;   Blakemore on Prohibition, Page 290.    However, our State and Federal Constitutions prohibit unreasonable searches and seizures, our State Constitution containing the following provisions:

"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable seizures and searches, shall not be violated; and no warrant shall issue but on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the person and things to be seized."    (Art. 1. Sec. 19).

Section 1525 of the Penal Code reiterates the provision of the constitution relative to search warrants and is as follows:
"   *   *   *   A search-warrant cannot be issued but upon probable cause, supported by affidavit, nam-

ing or describing the person, and particulerly describing the property and the place to be searched. "

It is uniformly held that a search warrant must conform strictly to the constitutional and statutory provisions for its issuance.    Purkey vs. Mabey, 193 Pac. 79 (Idaho) ; U. S. vs. Borkowski, 268 Fed. 408; 13 A. L. R. 1316.    It will be noted from the above quotations that the place to be searched and the person or things to be seized must be particularly described.   In Santo vs. State, 2 Iowa, 165, it is said that the term "unreasonable" in the constitution of the states has allusion to what has been practiced before the Revolution, and specifically to general search warrants in which the person, place or thing was not described, and that no such warrant is unreasonable in the legal sense when it is for a thing obnoxious to the law, and of a person and place particularly described, and is issued on oath of probable cause.

In U. S. vs. Alexander, 278 Fed. 308, it was held to be insufficient to describe a place as "corner Davis and Ashley Street, Jacksonville, Duval County, Florida, being the premises of Jim Alexander," as this description covered any one of four places.

Where a search warrant was issued to search the entire premises at "880 Bush Street" and on reaching the premises the officers found it was an apartment house containing a large number of families, and telephoned the commissioner and received his oral permission to amend the warrant by inserting words specifying "Apartment 4" and then searched Apartment 4 and found liquor, the proceeding was held invalid as the constitution requires that the place to be searched should be particularly described, and the warrant could not be so amended by the officers.   U. S. vs. Mitchell, 274 Fed. 128; U. S. vs. Inneli, 286 Fed. 731; Blakemore on Phohibition, 315.

In the case of People vs. Mayen, 188 Cal. 242, our Supreme Court held illegal a search warrant describing the property as "certain personal property

used as a means of committing a public offense, to-wit, attempting grand larceny."

It is interesting and enlightening in this connection to note the history of the constitutional provisions about search and seizure. The 10th Article of the Virginia Bill of Rights of 1776, and the 14th Article of the Massachusetts Bill of Rights and the 4th Amendment to the Federal Constitution were popular expressions of protest against the enforcement of laws which were commonly regarded as arbitrary and unreasonable. In other words, they grew out of the common opinion in Colonial America that smuggling, in violation of the unreasonable and obnoxious British trade. restrictions, was not only an adventurous and patriotic sport and a lucrative occupation, but almost an inalienable right. In 1760 William Pitt attempted to enforce the Sugar Act of 1733 which provided a prohibitive duty on all molasses brought into the colonies. Molasses was absolutely necessary to the prosperity of New England and the middle colonies for the making of rum, which was the currency used in the African trade and fur trade. The British officials found ordinary search warrants of little value as they were issued only on information and were applicable only to certain specified goods or specified places. The Writ of Assistance, which enabled the holder to search any place at will, was much more efficacious. The agitation caused by the use of these general warrants resulted in the passage of our constitutional restrictions and were for the purpose of prohibiting the use of general warrants. (See Article by Frank W. Grinnell in Massachusetts Law Quarterly, for August, 1922, page 43.)

It is therefore readily apparent that a search warrant must particularly describe the automobile to be searched and the article sought, and that a warrant which attempts to authorize the search of any or all automobiles passing over a certain street or road, would be without force and effect and of no protection whatsoever to the officer.

It next remains to be determined under what circumstances an officer may search motor vehicles for intoxicating liquor without a search warrant.

The ease with which liquor may be transported in motor vehicles has caused great practical difficulties in the enforcement of the prohibition laws. It is manifestly impossible to obtain search warrants in all cases, and unless officers can search cars when they have reasonable grounds for believing they a r e transporting intoxicating liquor, the Prohibition Act is rendered nugatory. The courts have recognized this difficulty and are recognizing various elements of suspicion as justifying a search. However, the opinions range from the strict view of the Mississippi and Georgia courts in the respective cases of Butler vs. State, 93 So. 3, and Douglas vs. State 152 Ga. 379, holding that where the officer is informed that a certain car contains liquor but does not see it or signs of it in the car, he is not justified in searching it without a warrant, as the offense or the acts constituting the offense were not revealed in his presence, to the more liberal view expressed by the late Judge Trippet in the case of U. S. vs. Bateman, 278 Fed. 231.

This opinion holds that it is not unreasonable for a prohibition officer to stop automobiles upon the public highway and search them for intoxicating liquors without a warrant, and the finding of the liquor justifies the search. The opinion points out that what is an unreasonable search and seizure is a judicial question, and the conclusion reached seems to be gained from the fact that Congress by express legislation has prohibited the search of private dwellings, but has failed to legislate on the question of searches of automobiles; that this impliedly shows that Congress was of the opinion that the search of automobiles to enforce the prohibition law was not unreasonable, and that the court in each individual case may take this into consideration together with the known fact that there is now and has been ever since the prohibition

laws went into effect, almost a continuous stream of automobiles from at or near the Mexican border to Los Angeles and other parts of the country. If these automobiles could not be stopped and searched without a search warrant the country would be flooded with intoxicating liquors unlawfully imported.

However, it should be remembered that the only restriction upon searches and seizures by state officers is that included in our State Constitution. This is a prohibition against UNREASONABLE searches and seizures.

What constitutes unreasonable searches and seizures is always a judicial question and is determinable from a consideration of the circumstances involved. U. S. vs. Vatune, 292 Fed. 497, and Arguello vs. U. S. 290 Fed. 672. Therefore, a legislative body is without authority to determine what is reasonable search and seizure, and each particular case must stand upon its own facts. Therefore, the officer making the search without a warrant, must in each instance determine at his peril whether the search is a reasonable one.

Blakemore on Prohibition, at page 332 states the rule to be "that an officer may search a motor vehicle whenever he either from the circumstances or from information on which a reasonable prudent man would act has probable and reasonable ground to believe that liquor is being transported therein."

This rule seems to be evolved from the well established rule that the right of search is an incident to a lawful arrest, plus a recognition on the part of the courts that unless officers can stop and search automobiles which they strongly suspect of illegal transportation, the law will be made nugatory.

In the case of U. S. vs. Vatune, 292 Fed. 497, Judge Bledsoe states the law to be as follows:

"It will be conceded of course, that an officer has no right to assume that an apparently innocent and un-

offending person is actually engaged in a violation of the law.    Therefore such officer would not be acting reasonably—would be acting 'unreasonably'—were he to subject apparently innocent and unoffending persons to search or their effects to seizure.    Having no reason to believe in their guilt, it would be unreasonable to act as if they were in fact guilty.    Therefore, to justify an arrest—an invasion of the rights of the person, or a search or seizure; an invasion of the rights of the property—of an individual, sufficient to avoid the protective provisions of the Fourth Amendment, the officer must be in possession of such knowledge, from the employment of his own senses, or from information actually imparted to him by another, as to cause him honestly and in good faith, acting with reasonable discretion, to entertain the belief or suspicion that the law is being violated.    Ballard v. State, 43 Ohio St. 16, 1 N. E. 76, 79;   Ex parte Morrill (C. C.) 35 Fed. 261,267;   United States v. Snyder (D. C.) 278 Fed. 650;   Wharton's Crim. Proc. (10th Ed.) Sec. 34. And if the suspect be committing a concealed crime, one not open to view, the greater the obvious necessity, of course, of relying upon information.   Ballard v. State, supra.

"In these days of widespread violation of the law, due to large temptation, big profits, and unrestrained appetites, together with the facile employment of the automobile in aid of successful consummation thereof, an officer ought not to be censured nor society penalized by a meticulous refusal to support a prosecution, if the officer, even in the absence of a warrant, and even with respect to a mere misdemeanor, acting upon the appearances, determines that the law may be maintained only by the 'immediate apprehension' (Wharton's Crim. Proc. (10th Ed.) Sec.35) of the offender, providing, always of course, that the officer acts in good faith and upon reasonable grounds of suspicion (Houck v. State, 106 Ohio St. 195, 140 N. E. 112).    And it ought to be obvious that the claim of good faith of the officer will always be materially supported, though of course it could not be created, by the subsequent

discovery of evidence tending to support the charge that the law was then and there being violated. The event contributes justification for the act. In this behalf the facts and conclusions in Ballard v. State, supra, are peculiarly opposite herein. There the officer acting upon information coming from a reliable source, sought to arrest a person as for the unlawful carrying of a completely concealed weapon. Resisting arrest, the offender shot the officer with the weapon which he had been concealing. On trial he claimed the right so to do, because the officer did not have absolute knowledge that he was then violating the law. This claim was denied, and justification for the attempted arrest was accorded to the officer because of the information imparted, to him, his reliance thereon, and the fact subsequently discovered, that the person sought to be apprehended was in truth then and there violating the law. The good faith of the officer, reasonably arrived at, was the controlling factor.

"In considering the question of such good faith, it ought also to be specially kept in mind that all officers are presumed to be engaged only in the proper performance of their duty, and that the exception to the rule, so to speak, should be specially pointed out. All reasonable intendments should be indulged in, in support of the propriety of official action, and all proper encouragement given to those actually engaged, not infrequently at the peril of their lives, in the attempted protection of society from those who would despoil or destroy it.

"In other words, in the practical and intelligent effort to enforce the law in the face of the violations thereof, made possible by modern conditions, modern instrumentalities, and modern devices, we will dismally fail in our duty to protect society, if we fail to make adequate and effective use of all the machinery available under the law. This does not mean that individual rights, guaranteed under the Constitution or otherwise, are to be disregarded; but it does mean, to me, at least, that positive encouragement, arising out

of a lax regard for the rights of organized society, is not to be accorded to those who would subvert the law and ultimately effect the destruction of government.

"Having probable cause to subject the person to immediate apprehension and detention, the officer possesses ample authority—in fact, it is his duty—to take into custodia legia the instruments of the crime and such other articles as may reasonably be of use as evidence upon the trial.    Thatcher v. Weeks, 79 Me. 547, 11 Atl. 599; Spalding v. Preston, 21 Vt. 9, 50 Am. Dec. 68; Getchell v. Page, 103 Me. 387, 69 Atl. 624, 18 L. R. A. (N. S.) 253, 125 Am. St. Rep. 30.    To course, necessary and permissible that the officer course, necessary and permissable that the officer search the person of the accused and all articles or instrumentalities in his immediate possession."

We believe that these two statements fairly reflect the attitude of the courts as a whole as to what constitutes a reasonable search of automobiles.    However, we are setting forth the following included that the driver was intoxicated and that the vehicle was used to transport liquor.    He stopped the vehicle and on search discovered a bottle of liquor.    It was held to be a legal search.

In Milam vs. U. S., 296 Fed. 629,  Federal prohibition officers having definite information that professional criminals were conveying in a motor car a quantity of whiskey along a certain road about a certain time, were on the watch to intercept it.    They stopped the defendants truck, and opened it and found instead of whiskey, Chinamen in the course of unlawful transportation.    It was held that assuming that this was a search of the truck, under the particular circumstances, the search was not unreasonable.

Let us again call your attention to the fact that no general right exists to search automobiles and that a promiscuous search of automobiles will not be countenanced under the law.    In each instance where the officer is acting without a search warrant he must be

in possession of such knowledge from the employment of his own senses or from information actually imparted to him by another as to cause him honestly and in good faith, acting with reasonable discretion, to believe that intoxicating liquor is being transported in that particular car.

Trusting we have satisfactorily answered your question, we remain

Yours very truly,

Edward T. Bishop, County Counsel

By J. A. Tucker, Deputy County Counsel.