## EAKER et al. v. UNITED STATES.

### No. 1137.

Circuit Court of Appeals, Tenth Circuit.

March 23, 1935.

Charles T. Mahoney and Charles A. Murdock, both of Denver, Colo., for appellants.

Thomas J. Morrissey, U. S. Atty., and Ivor O. Wingren, Asst. U. S. Atty., both of Denver, Colo.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

McDERMOTT, Circuit Judge.

Appellants were indicted, together with Brown and Simpson, charged with conspiracy to violate the Act of June 22, 1932 (47 Stat. 326, see 18 USCA §§ 408a, 408c), which makes it an offense to "knowingly transport or cause to be transported, or aid or abet in transporting, in interstate or foreign commerce, any person who shall have

been unlawfully seized, confined, inveigled, decoyed, kidnaped, abducted, or carried away by any means whatsoever and held for ransom or reward: * * * Provided further, That if two or more persons enter into [a] * * * conspiracy to violate the provisions of the foregoing Act and do any overt act toward carrying out such unlawful * * * conspiracy such ·person or persons shall be punished. * * * "

They were convicted and assign two reasons why the judgment should be reversed.

The first is that the court should have instructed verdicts of not· guilty. This assignment requires a brief review of the evidence. Costin had been convicted of bank robbery, had broken jail in Wyoming, and was hiding out in Denver. A $500.00 reward for his apprehension was offered. Appellants were friends of Costin and knew where he was concealing himself. Appellants proposed to Brown and Simpson that they pose as officers and arrest Costin, exact a thousand dollars from him as a condition of his release, which should be divided among the four of them. Brown and Simpson agreed; Cochran pointed out Costin to them. At midnight he was forcibly seized by Brown and Simpson, posing as officers, at the point of a gun, searched, chained and put in an automobile. Negotiations were then opened to release him if he would pay them: Costin had little money, but told his abductors that Eaker was his friend, and might help him raise it. Brown contacted Eaker and Cochran·and the three of ·them ransacked Costin's apartment but found no money. Eaker and Brown then met Costin and Simpson and they discussed ways and means of raising the money, Eaker playing the role of a friend in distress. Costin told Eaker he might raise the money in Laramie, Wyoming. Eaker and Cochran drove to Laramie, with a note from Costin to his partner. Brown, Simpson and Costin went to a hotel where, after considerable drinking, they retired for the night. Simpson was armed, but slept; Costin could have escaped from his captors, but he too slept profoundly. Eaker and Cochran returned the next day from Laramie empty-handed. Up to this point, the conspiracy did not include transportation of Costin in interstate commerce. The suggestion was then made that if Costin were taken to Laramie, he might be able to raise the money. Brown testifies that Costin first broached the idea; Costin testifies Eaker and Cochran suggested it first. It makes no difference. It was mutually agreed to transport Costin to Laramie to procure the ransom money to effectuate his release. The five of them started on the interstate journey, in two cars; they stopped at Broomfield, Colorado, and again debated the probable success of the journey upon which they had started. Again "we agreed then to go on to Laramie" and again started. Again they stopped on the road and debated the question; again they agreed to go on and started. Brown and Costin are· not in entire accord as to how strongly Costin urged the probable success of the trip and how vigorously appellants opposed the idea. Again, it is immaterial, for the record is clear that appellants on three occasions agreed to the plan to take Costin to Wyoming to raise the ransom. Eaker and Cochran, in one car, lost the leading car carrying Costin and Brown and Simpson, turned around and went back to Denver. The record does not disclose whether appellants crossed the state line or not, and it does not matter. Costin and Brown and Simpson went on to Laramie but were unsuccessful in raising the ransom. Costin was returned to Denver, released, shortly arrested and committed to serve his sentence for bank robbery. Appellants did not take the stand.

▇▇▇ Appellants' argument in support of the contention that here is no proof of a violation of the statute is elusive. The charge is a conspiracy to transport in interstate commerce a person kidnaped and held for ransom. There was clear, direct, and undenied proof that Costin was kidnaped and held for ransom. That he was a fugitive, that his kidnapers posed as officers, is no defense. The original conspiracy did not embrace the details of procuring the ransom; later such details were supplied as the plan developed, and one of them was the transportation of Costin in interstate commerce, from Colorado to Wyoming. Three times appellants agreed to the plan of transporting Costin to Wyoming to procure the ransom money. In furtherance of that part of the plan, an overt act was committed, towit, the transportation to Broomfield .and the trip beyond. The crime charged was thus complete. The argument that Costin might have escaped from the clutches of his abductors if he had tried, and that the trip from Colorado to Wyoming was made at Costin's suggestion, carries its own refutation. Costin was the unarmed prisoner of armed conspirators; his suggestion of the trip to Wyoming was to get the funds necessary to procure his release. In no sense can it be said that he made the trip

voluntarily. Would counsel seriously claim that this statute is not violated where a person held for ransom asks his captors to take him to another state in order to enable him to procure his release from their toils, and they take him there for that purpose? Or that it is a complete defense, as a matter of law, if it appears that he neglected an opportunity to escape from the clutches of armed bandits? Their argument, if we understand it, leads to such absurd conclusions. Pertinent decisions abound to the points that a conspiracy may, after its inception, be amplified and the details worked out; that it may contemplate a series of acts, the precise nature of which is not known at its inception; that once proven, it is presumed to continue until the contrary is established; that it is bottomed on an agreement to accomplish an illegal act. Among others see, Marcante v. United States (C. C. A. 10) 49 F.(2d) 156; Eldredge v. United States (C. C. A. 10) 62 F.(2d) 449; Telman v. United States (C. C. A. 10) 67 F.(2d) 716, certiorari denied 292 U. S. 650, 54 S. Ct. 860, 78 L. Ed. 1500; Curtis v. United States (C. C. A. 10) 67 F.(2d) 943; Hoffman v. United States (C. C. A. 10) 68 F.(2d) 101; Hyde v. United States, 225 U. S. 347, 32 S. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614.

That Costin was a criminal and Brown an accomplice, and that there was much drinking by the conspirators and their victim, goes only to the weight of their testimony. Their testimony was corroborated in many respects, and appellants did not avail themselves of their right to contradict it. The court was clearly right in denying the motions for instructed verdicts.

One of the bits of corroborative evidence was a letter which Simpson took from Costin's person when he was kidnaped, and which was later found by a federal officer in Eaker's apartment. The letter was not read to the jury, and there was nothing damaging in it if it had been. It was a pertinent circumstance that an article which Simpson took from Costin's person was later found in Eaker's apartment. The objection here argued is that the letter was obtained by an illegal search. But that objection was not seasonably made; nor is there the slightest evidence that the search was illegal. The officer may have had a search warrant for aught this record shows, and the presumption is the officer acted lawfully. United States v. Vatune (D. C. Cal.) 292 F. 497.

Appellants are clearly guilty of the atrocious crime with which they are charged. That they masqueraded as officers of the law does not exculpate them; it but adds to the odium of their offense.

The judgment is affirmed; the mandate will issue forthwith.