Erskine Glenwood **PAINTER**, Petitioner,

v.

**C. C. PEYTON**, Superintendent of the Virginia State Penitentiary, Respondent.

**Misc. No. 5601.**

United States District Court
E. D. Virginia,
Norfolk Division.

Aug. 26, 1966.

**914**

Erskine Glenwood Painter, pro se.

Reno S. Harp, III, Asst. Atty. Gen. for Com. of Va., Richmond, Va., for respondent.

## OPINION and JUDGMENT

DALTON, District Judge, sitting by designation.

This cause comes before the court upon a writ of habeas corpus filed by a State prisoner who is presently incarcerated in the Virginia State Penitentiary.

On May 5, 1961, petitioner was arraigned and pleaded guilty to indictments charging: (1) entering a banking house armed with a deadly weapon with intent to commit larceny of money, and (2) grand larceny of an automobile. On June 22, 1961, after receiving a presentence report, evidence, and hearing arguments of counsel, the Circuit Court of Augusta County, Virginia sentenced petitioner to a forty year term of imprisonment on the first indictment and a twenty year term on the second, the sentences to run concurrently.

On June 29, 1961, petitioner filed written motions for modification of the sentence or, in the alternative, that a new trial be granted. On March 7, 1962 the court, in the absence of petitioner,

heard these motions and overruled both by an order entered March 15, 1962. The case was appealed on a writ of error to the Supreme Court of Appeals of Virginia and, on October 8, 1962, that Court affirmed the judgment of the Augusta County Court.

Shortly after petitioner's arrest, his family hired Mr. Anthony J. Baroody, an attorney who had been retained in the past by the Painters, and he represented Mr. Painter in all of the above proceedings.

On July 6, 1964, a petition for a writ of habeas corpus was filed by petitioner in the Law and Equity Court for the City of Richmond. The writ was made returnable to the Circuit Court of Augusta County and a hearing was held in that Court on March 17, 1965. The Court appointed Mr. C. J. S. Thomas, Jr., to represent petitioner's interests. On March 20, 1965, an order was entered denying the writ and dismissing the petition. On January 19, 1966, a petition for writ of error was rejected by the Supreme Court of Appeals of Virginia. Petitioner had thereby exhausted his State remedies.

The court will quote from the present petition with respect to Mr. Painter's alleged grounds for relief:

> The convictions and sentences pursuant to which petitioner is being detained were imposed in violation of the Due Process Clause of the Fourteenth Amendment to the United States in that (1) the petitioner was denied the right to counsel prior to making a confession, was not effectively warned of his rights and was forced to confess by illegal means; (2) that the petitioner was not present at all stages of the proceedings against him; (3) that the Court abused its discretion in fixing punishment by taking into consideration the parole laws which resulted in a longer sentence than the Court would otherwise have imposed had such laws been nonexistent; (4) that the petitioner did not have adequate representation by counsel prior

to, and during the course of the criminal proceedings.

The court has carefully reviewed the record in this case, including all available transcripts of prior proceedings, and has concluded that Mr. Painter is not entitled to the relief he seeks.

■ The court will first note that the fact that petitioner did not have counsel during police interrogation does not constitute a violation of his constitutional rights. Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), the United States Supreme Court decision which gives one charged with a crime the right to the services of counsel in State prosecutions when the process has turned from investigatory to accusatory applies only to those whose trial began after June 22, 1964, and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which clarified Escobedo and made it explicit that the right to counsel exists during police questioning and that the accused must be warned of certain rights applies only to those whose State trial began after June 13, 1966. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). Petitioner Painter was convicted on June 22, 1961, and so cannot avail himself of either the Escobedo or Miranda decisions.

It will also be remembered that petitioner entered a voluntary plea of guilty to both indictments on the advice of an able and competent attorney. Mr. Baroody testified that he thought it best to enter the guilty pleas since Mr. Painter had told him that he was guilty (a fact which petitioner does not deny now) and it was his judgment as an attorney that the best course to follow would be to rely upon the mercy of the court. There is authority to the effect that a petitioner who enters a voluntary plea of guilty cannot later complain of irregularities which occurred prior to such plea (for example, that his confession was illegally obtained). See Suarez v. United States, 333 F.2d 366 (5th Cir. 1964), cert. denied, 379 U.S. 993, 85 S.Ct.

706, 13 L.Ed.2d 612 (1965). In Sullivan v. United States, 315 F.2d 304 (10th Cir. 1963), the Court of Appeals for the Tenth Circuit said that if a guilty plea is voluntary, an illegal arrest resulting in an inadmissible confession does not constitute grounds for relief under 28 U.S.C. § 2255.

■ Even without the above rule, however, it is obvious that petitioner's allegations of fraud and mental coercion with respect to his confession are groundless. Petitioner was apparently questioned on two separate occasions, March 23, 1961, and March 24, 1961. He was released after the first questioning, and testified that he was so nervous and upset that he could not sleep. As a consequence, Mr. Painter alleges, at the time of the second questioning he had been without sleep for some forty-five hours. Two agents of the Federal Bureau of Investigation were present when petitioner was arrested on March 24, 1961, and they testified in person and by affidavit that Painter was immediately informed of his right not to make a statement, that any statement made by him could be used against him in a court of law, and that he was entitled to consult an attorney prior to making any statement. Petitioner's attorney has argued that the agents must be mistaken in this regard, as "the cases stating that that must be done [that an accused must be warned of certain rights] had not yet been decided and that either these gentlemen were clairvoyant and knew what was coming or that they were mistaken in their recollection." This argument is not persuasive when it is remembered that these were agents of the Federal Bureau of Investigation who gave the warnings. The Sixth Amendment, with its right to counsel clause, has always been binding on the federal government, and it has always been the practice of the FBI to give a warning such as the agents claim they gave in this case. There is no reason to believe that the warnings were not given—in fact, all the evidence points to the fact that the petitioner was advised of his

rights. In view of the fact that petitioner was ultimately prosecuted by the State of Virginia, it seems unlikely, in the light of Johnson v. State of New Jersey, supra, that he was entitled, as a matter of right, to such a warning.

Agent Hiner testified that at the time petitioner was arrested he readily admitted his participation (with one Robert Lawson) in the bank robbery, and took the officers to a spot on his father-in-law's farm where his share of the money was hidden. He also informed them that he had disposed of both guns by throwing them into Lewis Creek, and pointed out this area to the officers. Before confessing, Agent Hiner says, Painter was again informed of his rights and the fact that he did not have to make a statement and could request the services of an attorney.

■ Painter claims that fraud was practiced on him by an officer of the Virginia State Police in that he was told that he might as well confess since Robert Lawson had already implicated him. This is denied by all parties concerned, and there is absolutely no evidence to support petitioner's allegations in this regard. It must be presumed, therefore, that officers of the law have done their duty and acted correctly. Goldberg v. Truck Drivers Local Union, 293 F.2d 807 (6th Cir. 1961), cert. denied, 368 U.S. 938, 82 S.Ct. 379, 7 L. Ed.2d 337; Godwin v. Looney, 250 F.2d 72 (10th Cir. 1957); Rosenthal v. Hunter, 164 F.2d 949 (10th Cir. 1947); Eaker v. United States, 76 F.2d 267 (10th Cir. 1935); United States v. Vatune, 292 F. 497 (N.D.Cal.1923). Petitioner is required to bring forth enough evidence to make a prima facie showing of improper actions before the government is required to defend its officers, United States v. Warrington, 17 F.R.D. 25 (N.D. Cal.1955), and Painter has failed to meet this burden. He admits that no physical coercion was practiced upon him, but claims that his will was weakened by the fact that he had been without sleep for some time. The record supports the

contention, however, that petitioner's confession was freely and voluntarily made with a full understanding of its import. The Supreme Court has stated that the *Escobedo* and *Miranda* cases "guard against the possibility of unreliable statements in every instance of in-custody interrogation, * * *." 86 S.Ct. at 1779. Even though these two cases are not applicable to this case, the court believes that it is evident that the officers and FBI agents voluntarily complied with the standards which were later to be delineated in *Escobedo* and *Miranda*, and that petitioner was offered every safeguard imaginable to protect him against the possibility of unreliable statements during interrogation. In addition, a full and fair hearing has been held at the State level on the question of the voluntariness of the confession, so no new evidence need be presented in a federal hearing. See: Johnson v. State of New Jersey, supra; Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L. Ed.2d 770 (1963).

It is the holding of this court that no rights of Erskine Painter were violated with respect to the police interrogation and the confession which he offered.

■ Petitioner next complains that he was not present at all stages of the proceedings against him, referring to the post trial motion to modify sentence or, in the alternative to grant a new trial. The court has been cited to no authority which holds that one has an absolute right to be present at such proceedings, and United States v. Lynch, 132 F.2d 111 (3d Cir. 1942), holds very definitely that an accused has no right to be present at the argument of post trial motions.

■ Painter alleges that the trial court abused its discretion in fixing punishment by taking the parole laws into consideration, resulting in a longer sentence than would otherwise have been handed down. Again, there is no evidence to support this allegation, and so it must be presumed that the judicial proceedings were regular and that the trial judge acted fairly and did not ex-

ceed his discretion. Dombroski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed. 2d 22 (1965); Harrison v. N.A.A.C.P., 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959); Saier v. State Bar of Michigan, 293 F.2d 756 (6th Cir. 1961); Pen-Ken Gas & Oil Corp. v. Warfield Natural Gas. Co., 137 F.2d 871 (6th Cir. 1943), cert. denied, 320 U.S. 800, 64 S.Ct. 431, 88 L.Ed. 483 (1944); United Steelworkers of America (AFL–CIO) v. Bagwell, 239 F.Supp. 626 (W.D.N.C. 1965); Craft v. Settle, 205 F.Supp. 775 (W.D.Mo.1962).

■ Next comes the standard allegation in all habeas corpus petitions, that petitioner did not have adequate representation by counsel. A good starting point for a discussion of this complaint is the case of Hickock v. Crouse, 334 F.2d 95 (10th Cir. 1964), wherein the Court of Appeals for the Tenth Circuit noted that the right to counsel does not contemplate miracles or that the guilty client will be acquitted. It seems obvious from the record as a whole that Mr. Baroody afforded Painter the best representation possible under the circumstances (it must be remembered also that Mr. Baroody was *not* a court appointed attorney, but was retained by Painter's family, some members of which he had represented before). Judge Moffett had this to say about Mr. Baroody at the time of the State hearing:

> This Court prior to going on the Bench practiced law at the same Bar with Mr. Baroody for ten years. He has practiced in this Court for ten years since I have gone on the Bench and I of my own knowledge have had considerable opportunity to observe Mr. Baroody in his practice of law and I consider him an able attorney. In addition to that we had two cases, two companion cases, two capital cases. The other defendant was represented by Mr. McPherson who is also an experienced and able attorney. These two gentlemen in their best judgment

concluded that there was no question about the admissibility of the confession and elected to proceed to advise their clients to enter a plea of guilty which makes mandatory on the Court the hearing of the evidence without an intervention of jury.

Mr. Baroody testified that he had talked to Painter at least a dozen times prior to trial, and had made as extensive an investigation as possible. It cannot be disputed that he appealed the case to the Supreme Court of Appeals of Virginia. The court finds that the evidence clearly indicates that petitioner was given fine representation by an experienced and able attorney. The fact that he performed no miracles is not a ground for habeas corpus relief.

As is usual in cases of this sort, Mr. Painter's petition for habeas corpus was drawn up for him by a fellow prisoner for some undisclosed consideration. Painter admits that in his State petition he included an allegation which simply was not true on the advice of this "attorney." There is nothing to support the allegations in the federal petition but Mr. Painter's word. Mr. Painter's counsel in the State proceeding argued that the best evidence was the word of the petitioner "who can remember clearly what happened" and who was in the best position to observe. However, a major portion of counsel's argument in the same proceeding centered around the contention that during all of the arrest and interrogation proceedings, petitioner was so sleepy and muddle headed that he had no conception of what was going on.

The record as a whole clearly supports the finding that none of petitioner's constitutional rights were abridged.

Therefore, it is hereby adjudged and ordered that the petition for habeas corpus be, and the same is hereby denied.

A certified copy of this opinion and judgment is directed to be sent to petitioner and the respondent.